J-A15045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| RITA M. RICHARDS AND CAROLINE J. RICHARDS, CO-EXECUTRICES OF THE ESTATE OF JAMES G. RICHARDS AND THE ESTATE OF HELEN RICHARDS | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 892 WDA 2022 |
| AMERIPRISE FINANCIAL, INC., AMERIPRISE FINANCIAL SERVICES, INC., RIVERSOURCE LIFE INSURANCE COMPANY, AND THOMAS A. BOUCHARD | : : : : : | |

Appeal from the Order Entered July 11, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD 01-006614

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:　　　　**FILED: SEPTEMBER 26, 2023**

Rita M. Richards and Caroline J. Richards, co-executrices of their deceased parents' estates, appeal from the order of the Court of Common Pleas of Allegheny County (trial court) awarding their attorneys $14,400 of the $155,407 in fees that they requested in their fourth fee petition in this Unfair Trade Practices and Consumer Protection Law (UTPCPL) action.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 73 P.S. §§ 201-1-201.93.

In reducing the requested amount, the trial court found that counsel had been compensated for their work because they have received over $250,000 for their work in obtaining a damages award of about $100,000; that the purposes of the UTPCPL of punishing and deterring unfair and deceptive business practices had been served by the other fees awards; that the work did not involve novel issues; and that the requested fees mainly benefited only counsel.

On appeal, Plaintiffs' attorneys allege that the trial court's findings for the reduction were made *sua sponte*, and that each of the findings were made in error. After review, we affirm.

**I.**

Because this is the fourth time that this case has come before us, we limit our factual summary to what is relevant in this appeal. In 1994, James G. and Helen Richards (Plaintiffs) bought a $100,000 universal life insurance policy and were told that their monthly premium would remain level at $500 per month. A few years later, however, Plaintiffs were told that they needed to pay a lump sum of $15,053.59 on top of their monthly premiums to prevent the policy from lapsing. Plaintiffs paid the lump sum and continued paying their monthly premiums until James G. Richards passed away in 2005, at which time Helen Richards received the $100,000 death benefit.

In 2008, Plaintiffs sued Ameriprise Financial, Inc., Ameriprise Financial Services, Inc., Riversource Life Insurance Company, and Thomas A. Bouchard

(collectively, Ameriprise),[2] asserting, among other things, violation of the UTPCPL. Plaintiffs later proceeded to a 2014 bench trial at which Helen Richards was represented by the Behrend Law Group while her late husband's estate was represented by the Massa Law Group. At the end of trial, the trial court found in Plaintiffs' favor on their UTPCPL claim and calculated actual damages at $15,053.59 plus interest for a total of $34,006.44. The trial court trebled those damages and awarded $102,019.32 as well as punitive damages of $50,000.[3]

After the verdict, Plaintiffs' attorneys submitted their first fee petition for litigating the UTPCPL claim,[4] and the trial court awarded attorneys' fees of

_____

[2] Mr. Bouchard was the financial advisor who induced the Plaintiffs into buying the policy and paying the lump sum. He was employed by Ameriprise's predecessor.

[3] Helen Richards passed away after the trial in 2015.

[4] Section 201-9.2(a) of the UTPCPL provides that:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 31 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. **The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees**.

$110,912.50, specifically, $84,072.50 in fees to the Behrend Law Group and $26,840 to the Massa Law Group. Ameriprise appealed to challenge the liability verdict, the fees award and the award of punitive damages. In December 2016, we affirmed the liability verdict and fees award but reversed the punitive damages. *See Richards v. Ameriprise Fin., Inc.*, 152 A.3d 1027 (Pa. Super. 2016) (*Richards I*).[5]

On remand, Plaintiffs successfully moved for the trial court to amend its verdict to award them $34,006.44 in restitution damages on top of the $102,019.32 in treble damages. Plaintiffs' attorneys also filed their second fee petition for their work on *Richards I* and preparation of the second fee petition. The trial court granted the petition, awarding $153,172 in fees to the Behrend Law Group and $2,800 to the Massa Law Group. Plaintiffs' attorney also filed a third fee petition for defending the second petition and preparing the third. The trial court granted the entire petition, awarding $38,934 in fees to Attorney Kenneth Behrend and $4,650 to Attorney Rudolph Massa.

Ameriprise appealed both the amended judgment and attorneys' fees awards. Addressing the amended judgment first, we determined that the trial

_____

73 P.S. § 201-9.2(a) (emphasis added).

[5] Ameriprise later sought and was denied allocatur by our Supreme Court. *See Richards v. Ameriprise, Fin., Inc.*, 170 A.3d 992 (Pa. 2017).

court erroneously awarded quadruple damages under the UTPCPL by awarding restitution damages along with treble damages. *See Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 866 (Pa. Super. 2019) (*Richards II*).

The remaining issues focused on the fees awards. First, we rejected Ameriprise's claim that the trial court could not award fees for appellate work, finding that the trial court could "award statutorily-authorized attorney fees incurred in defending the first appeal." *Id.* at 867. We next considered whether the trial court abused its discretion in awarding Plaintiffs' attorneys over $200,000 in fees for the first appeal and the preparation of the second and third fee petitions. *Id.* at 868. We found that the record supported the hourly rates charged by Plaintiffs' attorneys, *id.* at 869-70, but also found "the total amount of the attorney[s'] fees awarded herein raises the specter of disproportionality." *Id.* We declined, however, addressing proportionality because "remand is required to excise specific fees that should not have been awarded, to reduce fees that are excessive, and for a re-examination of specific line items in the fee petition...." *Id.* We explained that, though attorneys' fees for preparing fee petitions adheres to our legislature's aim of encouraging experienced attorneys to litigate UTPCPL cases, Plaintiffs' attorneys "spent an inordinate number of hours preparing the second and third fee petitions." *Id.* at 872. We also found that the trial court abused its discretion in not scrutinizing certain entries in the fee petitions and awarding $12,000 in fees for an unopposed petition to publish. *Id.* We, thus, vacated

the trial court's fees awards and remanded for entry of a new award. *Id.* at 873.

After the case was assigned to a new trial judge, Plaintiffs' attorneys lowered the requested fees in their second petition from $153,172 to $115,086, but did not lower their request in their third petition, continuing to request $38,934. The trial court awarded almost all the fees requested in the petitions, awarding $106,995 in fees to the Behrend Law Group and $2,800 to the Massa Law Group on the second petition, and $28,194 in fees to the Behrend Law Group and $4,650 to the Massa Law Group on the third petition.

Rather than appeal the new awards, Plaintiffs' attorneys moved to compel post-judgment interest. After their motion was denied, Plaintiffs' attorneys appealed to challenge not only the denial of its motion for interest but also the new awards. On appeal, we found that the appeal from the fees awards was untimely and there was no error in the denial of interest. *See Richards v. Ameriprise Fin., Inc.*, No. 100 WDA 2021, (Pa. Super. Nov. 8, 2021) (unpublished memorandum).[6]

In the meantime, on November 25, 2020, Plaintiffs' attorneys filed the instant fourth s petition seeking $155,407 in fees from March 2018 to October 2020 for their work on the *Richards II* appeal and litigating the second and

---

[6] Plaintiffs' attorneys' petition for allowance of appeal was later denied. *See Richards v. Ameriprise, Fin., Inc.*, 281 A.3d 1032 (Pa. July 6, 2022).

third fee petitions after the second remand. In response, Ameriprise argued that any more attorneys' fees would violate the UTPCPL's requirement that the fees bear some proportionality to the damages; that Plaintiffs' attorneys were seeking fees for work on which they did not prevail in **Richards II**; and that the fees sought were for work to obtain fees rather than defending the damages award.

On July 11, 2022, the trial court awarded Plaintiffs' attorneys $14,400 in fees, less than ten percent of that requested. The trial court found that Plaintiffs' attorneys were entitled to some fees for their work in briefing and arguing the damages issue in **Richards II**, even though they lost that issue. **See** Memorandum Opinion, 7/11/22, at 2. The trial court also found that Plaintiffs' attorneys were entitled to partial fees for their work on the second and third fee petitions. **Id.** at 3. Beyond that, however, the trial court would not award any fees because "it has been three years since the focus of this case was the client's right to recovery, or even defense of a recovery already won." **Id.** at 2. To that end, the trial court observed that Plaintiffs' attorneys' arguments related to the fee petitions were raised in a similar case in which they were awarded over $300,000 for the same arguments. **Id.** at 3.[7] In the trial court's view, the salient considerations for determining the proper fees

---

[7] That case was later reviewed by our Supreme Court. **See Gregg v. Ameriprise Fin., Inc.**, 245 A.3d 637 (Pa. February 17, 2021).

award were whether Ameriprise was punished; whether Plaintiffs' attorneys had been paid for their argument; whether their arguments were novel and required additional labor; and whether Plaintiffs' interests were still being furthered. Finding that the answer to each question weighed against awarding more fees, the trial court awarded only $14,400 in fees. *Id.* at 4-5.

Plaintiffs' attorneys timely appealed to challenge several aspects of the trial court's fees award.

## II.

We first review our standard of review for an award of attorneys' fees under the UTPCPL. As we explained in **Richards I**:

> [W]e may not disturb a trial judge's assessment of these amounts unless there has been an abuse of discretion. **See Neal v. Bavarian Motors, Inc.**, 882 A.2d 1022, 1029 (Pa. Super. 2005). Under the UTPCPL, the following factors should be considered when assessing the reasonableness of counsel fees:
>
> > (1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the case; (2) The customary charges of the members of the bar for similar services; (3) The amount involved in the controversy and the benefits resulting to the clients from the services; and (4) The contingency or certainty of the compensation.
>
> **Sewak v. Lockhart**, 699 A.2d 755, 762 (Pa. Super. 1997) (quoting **Croft v. P. & W. Foreign Car Service**, 383 Pa.Super. 435, 557 A.2d 18, 20 (1989)).
>
> Subsequently, in **McCauslin** [**v. Reliance Fin. Co.**, 751 A.2d 683 (Pa. Super. 2000)], this Court held that prior to awarding counsel fees to a plaintiff on a UTPCPL claim, the defendant must have "a fair opportunity to address" the legitimacy of the claim. In remanding the case for further proceedings, this Court made the following observations: (1) there should be "a sense of

proportionality between an award of damages [under the UTPCPL] and an award of attorney's fees," and (2) whether plaintiff has pursued other theories of recovery in addition to a UTPCPL claim "should [be] given consideration" in arriving at an appropriate award of fees. 751 A.2d at 685–686.

***Richards I***, 152 A.3d at 1038-39.

While claiming all their issues implicate errors of law, Plaintiffs' attorneys insist that we disregard the above standard and give no deference to the trial court's findings because they were made by a successor trial judge who was not involved in the case until the second remand. However, contrary to this argument, the decision here was not made on a "cold record" by a judge with no familiarity with this matter. As discussed, the fourth fee petition included claims for attorneys' fees for work on the second and third fee petitions after the second remand. The trial judge who heard the fourth petition was the same judge who awarded fees on those petitions. Thus, he was more than familiar with both parties and most proceedings for which he was asked to award fees. Furthermore, in having adjudicated those petitions, the trial judge knew the adequacy of the compensation that Plaintiffs' attorneys received for their work on the ***Richards I*** appeal, which was relevant to the fourth fee petition's request for fees for the ***Richards II*** appeal, since that appeal involved obtaining and defending the ***Richards I*** appeal fees. That the judge did not preside over the original trial is irrelevant because no fees from the original trial were at issue. We find no merit in Plaintiffs' attorneys' first argument about the proper standard of review.

**III.**

**A.**

Plaintiffs' attorneys contend that most of the reasons relied on by the trial court in reducing the requested amount were not raised by Ameriprise. Generally, "the manner by which attorneys' fees are determined in this Commonwealth, under fee-shifting provisions, is the lodestar approach," which derives from "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Krishnan v. Cutler Grp., Inc.*, 171 A.3d 856, 903 (Pa. Super. 2017) (citation omitted). Because the fee amount determined by the lodestar amount is "strongly presumed to yield a reasonable fee," *Logan v. Marks*, 704 A.2d 671, 674 (Pa. Super. 1997), the "[t]he party challenging the fee request bears the burden of proving that the fee request is unreasonable." *Richards II*, 217 A.3d at 866 n.14. Plaintiffs' attorneys argue that the trial court's discretion was limited to only those objections raised by Ameriprise against their fourth fee petition.

We find this argument unavailing on both the facts and the law. First, the primary grounds on which the trial court relied in reducing the requested amount were raised by Ameriprise in their brief in opposition. There, Ameriprise urged that the trial court deny the fourth fee petition in its entirety, since Plaintiffs' attorneys had received fees many times over the actual damages suffered by Plaintiffs and were now seeking an additional $150,000 in fees—bringing their total fee award to over $400,000 in a case in which the

actual damages suffered by the Plaintiffs were $15,053.59. **See** Brief in Opposition, 1/25/21, at 1-2. They also argued that the fourth fee petition sought fees for work that was done to obtain fees on the second and third fee petitions, and that the amount of fees sought was excessively disproportionate with the damages award in light of the fee awards that Plaintiffs' attorneys had received. **Id.** at 3-6. For its part, the trial court used these same reasons in substantially reducing the amount requested in the fourth fee petition. Besides noting that it has been several years since the focus of the case was the damages award, the trial court found that this case still raises the specter of disproportionality because Plaintiffs' attorneys were awarded almost all the fees requested in the second and third petitions. **See** Memorandum Opinion at 2-4.

However, even if the trial court relied on reasons that it considered *sua sponte*, there is no error. A court addressing a fee petition should "generally evaluate the reasonableness of the expenditure of time for the services listed in the fee petition [and] make adjustments when they are warranted." **Richards II**, 217 A.3d at 872. As to what is reasonable, the court is not limited to opposing counsel's objections and may conclude that a fee is excessive on grounds it raises *sua sponte*. **See Carmen Enterprises, Inc. v. Murpenter, LLC**, 185 A.3d 380, 390-91 (Pa. Super. 2018) ("the acquiescence of opponent's counsel is not dispositive of what amount the … court may decide is 'fair and reasonable'" and defendant's "strategic choice"

to object to all of an attorney's time as not reasonable and necessary rather than object to his hourly rate "did not, as [plaintiff] claims, preclude the trial court from performing its judicial duty to decide the reasonableness and the fairness of the fee request" and reduce the fee award based on an hourly rate). (citation omitted).

In ***Carmen***, we rejected a very similar argument to that raised here. As we explained,

> it bears noting that in this case opposing counsel's "concession" on Chasan's billing rate came in the context of her over-arching argument that Carmen was not entitled to any attorneys' fees at all, and her companion argument that Carmen had failed to meet its burden of proof on whether the services provided by Chasan were reasonable and necessary. Viewed in that context, counsel obviously chose to focus on the reasonableness of the hours claimed, rather than dilute the force of her argument by also contesting hourly rates.
>
> Counsel was entitled to make this choice as a matter of litigation strategy. **However, her strategic choice did not, as Carmen claims, preclude the trial court from performing its judicial duty to decide the reasonableness and the fairness of the fee request. Nor does it constrain our appellate review**.

***Id.*** at 390-91 (emphasis added) (internal record citation omitted).[8]

Likewise, Ameriprise's strategic decision to focus on the proportionality of the award did not preclude the trial court from exercising its discretion and

---

[8] While ***Carmen Enterprises*** involved contractual fee-shifting rather than the UTPCPL, that does not make it inapplicable. Plaintiffs' attorneys' claim that the trial court could not raise issues *sua sponte* is not based on any peculiarity of the UTPCPL or fee-shifting statutes, but instead relies on case law involving general litigation.

considering other facts for why Plaintiffs' attorneys were entitled to a reduced amount on their fourth fee petition. We find this issue meritless.

**B.**

Plaintiffs' attorneys next fault the trial court for stating that one of the factors it considered was whether Ameriprise has already been "punished." The trial court later admitted that its use of the phrase was inartful and would have been better characterized as whether Plaintiffs had been made whole and whether Ameriprise have been deterred from its prior behavior. ***See*** Pa.R.A.P. 1925(a) Opinion, 11/17/22, at 3. Despite this clarification, Plaintiffs' attorneys assert that there is limited support for the proposition that the statutory award of attorneys' fees serves a deterrent function. Instead, they contend, the primary reason for the inclusion of fee-shifting in a statute like the UTPCPL is "to encourage potential plaintiffs to seek vindication of important rights and to deter defendants from conduct violating those rights." ***Krebs v. United Refin. Co. of Pa.***, 893 A.2d 776, 788 (Pa. Super. 2006) (citation omitted). By finding that deterrence weighed in favor of reducing the requested fees, Plaintiffs' attorneys believe the trial court's decision was manifestly unreasonable because it forced Plaintiffs to absorb the cost of defending against Ameriprise's second appeal.

Plaintiffs' attorneys' argument posits that the trial court considered only the deterrent effect of the award and disregarded encouraging competent counsel to represent plaintiffs' event through recovery may be small. First,

the trial court's reliance on deterrence was but one of several factors that the court considered, thus making the underlying premise of this argument faulty. Second, punishing deceptive business practices is one of the purposes of the UTPCPL that a trial court is to consider in ruling on an attorney's fee request, although the punishment of such conduct cannot support awarding more than a reasonable attorney's fee. **Richards II**, 217 A.3d at 871. As we have explained:

> **"[T]he fee-shifting statutory provision of the UTPCPL is designed to promote its purpose of punishing and deterring unfair and deceptive business practices** and to encourage experienced attorneys to litigate such cases, even where recovery is uncertain." Thus, a court should consider these purposes when deciding whether to award attorney fees.

**Dibish v. Ameriprise Fin., Inc.**, 134 A.3d 1079, 1092 (Pa. Super. 2016) (emphasis added) (citation and footnote omitted).

Thus, the trial court did not err in considering the purpose of the UTPCPL's fee-shifting provision in punishing and deterring unfair and deceptive business practices.

## C.

Plaintiffs' attorneys next argue that the trial court erred in considering a fee award from another case.[9] In the relevant section of its decision, the trial court explained:

---

[9] In its statement of questions involved, Plaintiffs' attorneys lists two issues for its argument concerning novelty, claiming that the trial court erred by

- 14 -

In addition, we have reviewed Judge Marmo's memorandum opinion dated April 29, 2021, in *Gregg v. Ameriprise Financial, Inc.*, GD 01-6611. We note that Plaintiffs' counsel made substantially similar arguments in that case regarding 1) the request for higher hourly rates within a short period of time, 2) the demand that Plaintiffs' counsel always be awarded at least as much in hourly rates as awarded in a different case, and 3) the proportionality of the attorney fee award to the client's recovery. Those arguments were partially by the judge, yet the court still awarded Plaintiffs' counsel $301,685.56 for making said arguments. Based on Plaintiff's counsel being paid for substantially similar work in *Gregg* and possibly other cases, we are reticent to award significant additional fees here. **The goal of the UTPCPL to eradicate the use of unfair and deceptive business practices in Pennsylvania has been met, as Plaintiffs' counsel has spent twenty years prosecuting several substantially similar cases against the named defendants**.

Memorandum Opinion at 3 (emphasis added).

Plaintiffs' attorneys insist that the trial court misconstrues the nature of the arguments that it raised in that case, as they were not substantially the same as that raised in the other case.[10] Based on our review, however, it appears that both cases did, in fact, present the same argument. As the trial

---

holding that the requested fees should be reduced because of a fee award made in another case, and that the trial court erred in holding that its arguments in **Richards II** were not novel. **See** Brief for Plaintiff's attorneys at 4. In its argument, however, they raise a unified, single argument. **Id.** at 37-44. Accordingly, we do the same.

[10] Plaintiffs' attorneys also complain that the trial court's reliance on another award was not based on an objection raised by Ameriprise. However, as discussed, in determining an appropriate award of attorneys' fees, a trial court is not limited to objections raised by opposing counsel and may on grounds it raises *sua sponte*. **See infra** at 12-13 (citing **Richards II** and **Carmen**).

- 15 -

court's decision shows, the other cases involved arguments related to hourly rates and the proportionality of the attorneys' fee award to the client's recovery. In their fourth fee petition, meanwhile, Plaintiffs' attorneys sought fees for researching and responding to Ameriprise's claims in ***Richards II*** that the awarded hourly rate should be reduced and that the amounts requested were disproportional to the actual damages proved during trial. ***See*** Fourth Fee Petition, 11/25/20, ¶ 2. Thus, contrary to Plaintiffs' attorneys' contentions, there was overlap.

Even still, that the arguments in the two cases may not have been exactly duplicative is of no moment. As the trial court's above discussion shows, its determination about the similarities between the cases involving Ameriprise was part of its broader finding about the lack of novelty in Plaintiffs' attorneys' argument. As the trial court explained, it was "reticent" to award another substantial award because Plaintiffs' attorneys have spent two decades prosecuting substantially similar cases against Ameriprise. In the trial court's view, this decreased the level of novelty from one case to the next in the arguments that Plaintiffs' attorneys were advancing, particularly the litigation of their hourly rates and what role proportionality between the damages and the award should play—both issues that were raised, briefed and argued in the other case. Indeed, in responding to this issue in its Pa.R.A.P. 1925(a) opinion, the trial court acknowledged that "[a] comparison of the similarity of the present case with other cases is an inherent part of

assessing the 'novelty' of a matter," and that in determining the novelty of the arguments Plaintiffs' attorneys raised in *Richards II* and their second and third fee petitions, the trial court simply attributed lesser novelty to their arguments than counsel did. *See* Pa.R.A.P. 1925(a) opinion at 3. Because the complaint on this point at its core is merely a disagreement about the novelty of the arguments it raised, we will not intrude on the trial court's discretion in determining that the arguments asserted were not novel considering the counsel's experience in raising essentially the same arguments in similar other cases.

For these reasons, we also reject Plaintiffs' attorneys' argument that the trial court disregarded or minimized the novelty of the issues raised in *Richards II*. Based on our review, the only three sub-issues in *Richards II* on which Plaintiffs' attorneys prevailed were not novel at the appellate stage of the case, as they would not have required significant work beyond the work that Plaintiffs' attorneys had done in litigating the second fee petition, work for which Plaintiffs' attorneys were compensated in the third fee petition award. The issue of jurisdiction to award appellate attorneys' fees was fully briefed and litigated in the trial court before the *Richards II* appeal. *See* Second Fee Petition, 11/22/17, at 2; Motion to Strike Second Fee Petition, 12/6/17, at 2-3; Response to Motion to Strike Second Fee Petition, 12/11/17, at 2-8. The issue of Plaintiffs' attorneys' rates was extensively litigated by Plaintiffs' attorneys in the trial court before the *Richards II* appeal. *See*

Second Fee Petition at 5-13; Plaintiffs' Brief in Support of Second Fee Petition, 11/22/17, at 13-26 & Exs. 3-15; Plaintiffs' Supplement in Support of Second Fee Petition, 12/19/17; Plaintiffs' Sur Reply in Support of Second Fee Petition, 1/3,18, at 11-12. Plaintiffs' attorneys also briefed and argued whether attorneys' fees may be awarded for filing and litigating a fee petition in the trial court before the **Richards II** appeal. **See** Plaintiffs' Sur Reply in Support of Second Fee Petition at 12-16; Third Fee Petition, 2/29/18, at 2-3. As a result, we find no abuse of discretion in the trial court reducing the requested amount based on the novelty or lack thereof of the arguments.

## D.

Plaintiffs' attorneys' final argument challenges whether the requested fees benefited only Plaintiffs' attorneys. They first argue that the trial court's finding runs contrary to **Ambrose v. Citizens Nat. Bank of Evans City**, 5 A.3d 413 (Pa. Super. 2010), where we observed that when a defendant repeatedly unsuccessfully challenges the award of counsel fees, the plaintiff "must be entitled to the attorneys' fees incurred in rebuffing the unsuccessful challenge." **Id.** at 423. Plaintiffs' attorneys assert that this reasoning applies with equal force here because they are seeking fees for time spent successfully opposing Ameriprise's claims in **Richards II** concerning the fees awards. Plaintiffs' attorneys also argue that Plaintiffs maintained an interest in the **Richards II** appeal and the award of attorneys' fees because the appeal

sought to increase the damages award, and having the attorneys' fees paid was in Plaintiffs' interests.

First, Plaintiffs' attorneys' reliance on *Ambrose* is misplaced. In *Ambrose*, our discussion focused only to fees for litigation of an appeal that involved the plaintiffs' judgment, which it affirmed, and the attorneys' fees incurred in obtaining that judgment and to defending unsuccessful challenges to the initial attorneys' fees on remand after the award was vacated; no fees were sought or awarded for litigating attorneys' fees in the appeal where, as here, the fee award was vacated or for attorneys' fees incurred in defending or seeking a secondary award of fees. *See Ambrose*, 5 A.3d at 416-17, 423-24. The fees at issue in *Ambrose* were akin to the fees that Plaintiffs' attorneys have received on the second and third fee petitions, not akin to the fourth fee petition.

We also find no abuse of discretion in the trial court's finding that Plaintiffs' interests were still being furthered. On this point, the only issues on which Plaintiffs' attorneys prevailed even partially in the *Richards II* appeal and the only issues on the remand from that appeal related to attorneys' fees. While one of the issues in *Richards II* involved Plaintiffs' recovery, defendants prevailed on that issue. *Richards II*, 217 A.3d at 861-62, 866. Plaintiffs were unaffected by whether Plaintiffs' attorneys' award of attorneys' fees for the *Richards I* appeal was affirmed or reversed or by the proceedings concerning the *Richards I* appeal fees on remand. The fee

agreements that Plaintiffs entered into provided that they agreed to pay "reasonable counsel fees of the following percentage of the gross amount realized by suit, settlement or otherwise: Forty percent (40%) or the Court awarded attorney fees, whichever is greater."[11] The attorneys' fee award of $110,912.50 following trial that had been affirmed by itself exceeded 40 percent of the damages award of $102,019.32 that Plaintiffs realized from the suit, thus relieving Plaintiffs of any obligation to pay fees to Plaintiffs' attorneys.

Additionally, as the trial court noted, Plaintiffs' attorneys have been amply compensated not only for defending both Plaintiffs' recovery and their initial attorneys' fee award on appeal, but also the second award of attorneys' fees, as they were awarded $142,639 for their work on the ***Richards I*** appeal and for litigating their right to attorneys' fees for the ***Richards I*** appeal, of which $25,431 was for filing the fee petition and $32,844 for litigating those fees. The trial court in its opinion awarding those fees held that the award was not disproportionate because it compensated Plaintiffs' attorneys for both the ***Richards I*** and ***Richards II*** appeals. ***See*** Trial Court Opinion, 10/30/20, at 4 ("we are merely awarding fees for the preparation of two separate appeals brought by Defendants"). In making the $142,639 fee award, the trial court noted that any further fee petitions could be found to be disproportionate. ***Id.***

---

[11] The fee agreement is attached as Exhibit A to Ameriprise's brief in opposition to the fourth fee petition filed on January 21, 2021.

Notably, Ameriprise has not increased litigation since that ruling, as they did not appeal the award on the second and third fee petitions.

Accordingly, we find no abuse of discretion in the trial court's finding whether Plaintiffs' interests were still being furthered. Thus, for all these reasons, we affirm the trial court's award of $14,400 in attorneys' fees on Plaintiffs' attorneys' fourth fee petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2023